**COWIE v THE CENTRAL TRUST CO, et**

Common Pleas Court, Hamilton Co

Decided March 29, 1939

ing the continuous employment of a maid, but that said Margaret Cowie failed to leave her said personal property as agreed upon, having left a will with numerous bequests and legacies.

Therefore, plaintiff asks for $17,000 damages.

Briefly, the demurrer to petition sets forth that the provisions of §8621, GC apply, and also §10504-3a applies. Has plaintiff stated a cause of action?

The claim that §8621, GC, applies in this case, we feel can be disposed of readily. The portion of the section relied upon reads as follows:

"No action shall be brought whereby to charge the defendant * * * upon a contract or sale of lands, tenements and hereditaments, or interest in or concerning them, nor upon any agreement not to be performed in one year from the making thereof."

It will be noted that we are not concerned here with a charge against the defendant upon a contract as to lands, etc. as it is alleged in the petition only that the testatrix agreed to turn over all her personal property to the plaintiff herein.

It also might be urged that there has been complete performance of her part of the contract by the plaintiff herein, and the complete performance included services so peculiar and unique in their nature as to render this a defense of part performance with reference to any claim that the statute of frauds covered this situation. I take it that complete performance is certainly, in equity, as potent a defense to a statute of frauds claims as part performance, and in fact, technically should be called part performance.

So if this is a contract or sale concerning lands, etc., there is a part performance to take it out of the statute.

However, it is our contention that under the terms of the statute the same does not cover the contract set forth in the petition, as stated above.

More difficult, however, is the question as to §10504-3a. It is true that until the passage of this new section of the code, a verbal contract whereby one person agreed to leave property, by will, to another was valid in Ohio, but §10504-3a is a new statute of frauds. It was effective September 2, 1935, more than five years after this alleged contract was made and over two years before testatrix 'n this case died. This section provides as follows:

John C. McCarthy and John M. Ryan, Cincinnati, for the demurrer.

Stewart S. Cooper, Cincinnati, for plaintiff.

## OPINION

By MORROW, J.

The petition in substance states that the defendant is executor of the estate of Margaret Cowie, and that Margaret Cowie was indebted to plaintiff in the sum of $17,000, by reason of breach of contract. Her claim has been refused by the executor, though properly filed. Plaintiff states that at the request of Margaret Cowie she entered into a verbal contract with said Margaret Cowie in 1930, whereby plaintiff agreed to abandon her home and build, with the assistance of Margaret Cowie, a new home in location approved by Margaret Cowie.

Plaintiff also agreed to provide a room for Margaret Cowie and give her board and nursing care the rest of her life. In return therefor Margaret Cowie agreed to leave at her death, in favor of plaintiff a last will whereby all her personal property would go to plaintiff, except two one thousand dollar bequests.

Plaintiff states that relying upon said agreement, she left her home and performed all these things she agreed upon, includ-

"No agreement to make a will or to make a devise or bequest by will shall be enforceable unless such agreement is in writing, signed by the party making it or by some other person by his express direction, in which latter case the instrument must be subscribed by two or more competent witnesses who heard such party acknowledge that it was so signed by his direction."

In this case, therefore, we have this situation: An alleged oral contract, good, although oral, as of the time of its execution; a statute requiring said contract to be in writing enacted five years later; a testatrix stated as a party to said contract who died two years after the statute was passed, and a suit on the contract filed against the estate of the testatrix six months later.

We are concerned with a constitutional question.

**Article II, Section 28, of the Constitution of the state of Ohio** provides:

"The general assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts; but may, by general laws, authorize courts to carry into effect, upon such terms as shall be just and equitable, the manifest intention of parties and officers, by curing omissions, defects and errors, in instruments and proceedings, arising out of their want of conformity with the laws of this state."

The defendant here has cited **Smith v New York Central Rd Co, 122 Oh St, 45, 170 N. E., 637,** as authority for the demurrer. This case states:

"A statute which relates exclusively to remedial rights is not within the constitutional inhibitions against legislative enactments of retroactive laws. §11224, **GC,** is remedial in its nature, and applies to all causes coming within its terms upon which actions have not been commenced in any of the trial courts of this state on or before August 2, 1927."

This concerns the law which reduced the statute of limitations from four years to two years as to certain torts. Neither this section, nor the section under consideration now, have saving clauses, that is to say, provisions in the law itself stating that it shall not apply to pending causes of action. The court in the Smith case says:

"On the theory that a right to sue once existing, becomes a vested right, and can not be taken away altogether, it does not conclusively follow that the time within which the right may be asserted and maintained may not be limited to a shorter period than that which prevailed at the time the right arose, provided such limitation still leaves the claimant a reasonable time within which to enforce the right."

This process of reasoning can not be applied to the instant case, for the reason that §10504-3a by its terms extinguishes the former right in this state to maintain an action upon an oral contract to dispose of property by last will and testament. Such right had been established by decisions for many years past, and §10504-3a is in effect a new statute of frauds, as above stated and as its terms clearly indicate.

The plaintiff, in the Smith v R. R. case had one year to file his suit, instead of three, after the passage of the statute of limitations act in question in that case.

There is much said in text books and decisions about remedial legislation, and the fact that it does not generally constitute retroactive legislation, which, generally speaking, is prohibited in Great Britain, as well as the United States.

Pomeroy's Equity Jurisprudence, Vol. 5, page 5002, Section 2239, in referring to the fourth section of the statute of frauds, states:

"It is established both in law and equity that the fourth section of the statute of frauds does not avoid parol contracts, but establishes a rule of evidence."

In Wade on Retroactive Laws, it is stated at page 270, paragraph 233:

"A statute which provided that no action should be brought and maintained upon a special contract or promise to pay a debt from which the debtor had been discharged by proceedings in bankruptcy, or under the state assignment laws, unless such promise be made or contained in some writing signed by the promisor, was held to apply to a verbal promise made before its passage, upon which suit was instituted thereafter. The ground upon which this view of the law is based, is that the statute does not affect the validity of the contract, but merely goes to the remedy for the breach of it; but if this promise was legally binding when made, it is difficult to distinguish, on principle, the operation of a statute of frauds by which the remedy is totally destroyed, from the statute of limitations,

or any other legislative act which operates retroactively to produce the same effect."

The author also points out in this paragraph that

"The English doctrine which favors the prospective construction of similar statutes is more reasonable."

In the English acts requiring oral contracts thereafter to be in writing there was a future date fixed by the act itself for its going into effect, and this was held to validate the same, "as enabling those who relied upon such oral promises to bring their actions under the old law."

Of course, the main statute referred to above parallels §10504-3a in the sense that it requires a written promise where formerly a verbal promise sufficed as basis of the cause of action, and if we follow the line of decisions, of which the last cited thereunder is Kingley v Cousins, 47 Maine, 91, the demurrer in this case would be sustained. The court in that case says in its last syllabus:

"The provisions of the statute relate, not to the validity of the contract, but to the remedy for the breach of it, and are constitutional."

On the other hand, we have a statute in California, similar to our own statute, and a case under the same reported in 19 Calif. App. Rep., p. 310, Charles Ignatius Keefe v Elizabeth A. Keefe et al. Syllabus 1 of this case reads:

"Where a mother, in consideration of the conveyance to her at her request of her son's one-tenth interest in his deceased father's land, and also of the interest of her daughters in the same land, for her better maintenance during her life, agreed to return to each of them one-tenth interest in the property at death, and then made a will accordingly, which she afterwards revoked, and willed all of the father's land to her daughters, and died having made no other disposition of the land during life, her contract with the son was neither uncertain nor invalid, and being wholly concerning land, the jurisdiction in equity to enforce the same as against the daughters, to the extent of his interest in the land, is well established."

Syllabus 3 reads:

"Since the oral contract to return the interest in the land to the son at the mother's death was made before the amendments to Section 1624 of the Civil Code and Section 1973 of the Code of Civil Procedure were enacted, which now require such a contract to be in writing, those amendments can not have a retroactive effect, and operate to make void a contract, which was valid at the time it was made."

The court says:

"And certain it is that the amendments should not have a retroactive effect, and operate to make void a contract valid at the time of its execution." (Citing 29 Am. & Ency. of Law, 814; 20 Cyc. 281).

We are adopting the brief reasoning and opinion of the California court, and rejecting the Maine cases as authority. It seems, and we must concede, that this is remedial legislation, and statutes of frauds as well as statutes of limitations come in that category. However, it is sophistry and only a partial statement to say that remedial legislation is not retroactive, and that §10504-3a can be sustained as to this case, because it does not take away a right, but merely establishes a rule of evidence. The contract, valid at its inception, is destroyed by the statute. It does not abolish its destructive quality to call a sword a ploughshare.

Of course the statute is not retroactive as to all contracts that initiate after the passage of the statute, but here certainly an existing right to sue on an oral contract in 1930 is extinguished before the testatrix dies in 1938.

Off hand I can not think of any alternative right, like a declaratory judgment or suit to impress a trust, which could serve as a substitute in the face of this statute. The alleged contract would be in effect destroyed by the section under consideration if held to apply thereto.

In this connection **Watson's Work on the Constitution** cited in **31 O. N. P. (N.S.) 342:**

"The general doctrine on this subject is, that while laws which are in force when a contract is made enter into its obligation, yet parties do not acquire vested rights in the special remedies or modes of procedure existing at that time; and, while the legislative department can not withdraw all remedies and so, in effect, destroy the contract, nor impose new restrictions or conditions such as would prevent the enforcement of rights under the contract according to the usual course of justice when the contract was made, for neither

could be done without impairing the obligation of contract, the legislative department can modify or change existing remedies or prescribe new modes of procedure without impairing the obligation of contracts, conditioned, however, that a substantial remedy remains or is afforded by means of which a party can enforce his rights under the contract."

and **Black's Work on Constitutional Law,** cited on the next page, are pertinent.

Therefore, because to enforce §10504-3a with reference to this alleged contract, as set forth in the petition, would in effect destroy the alleged contract, we are overruling the demurrer here.

There are several other questions raised by the demurrant which we will note briefly.

We take it that it is well settled in this state that if either side of a contract may be performed within one year, then such contract is not within the statute of frauds. **Randall v Turner, 17 Oh St, 262; Blakeney v Goode, 30 Oh St, 350; Jones v Pouch, 41 Oh St 146** and other cases. Without discussion, therefore, we are rejecting defendant's claim that the petition was within the statute of frauds, because no specific date was designated. We are concerned with the life of an old lady who might have died within a year, or seven or eight years.

The case of **Gramann v Borgman, 14 N. P. (N.S.) 449,** provides for specific performance of parol agreement to dispose of real property.

The case of **Emery v Darling, 50 Oh St, 160,** held that the promisee became the equitable owner of the property to be given her by will at the death of the promisor. This case also spoke of specific performance of the contract.

The petition in this instant case does not ask for equitable remedy, but refers to the breach of the contract and requests a judgment in law in the sum of $17,000.

However, we are not concerned with the prayer of the petition when considering the same on demurrer, but with the allegations only. The prayer is not part of the cause of action. Bates' Pleading, par. 287, p. 252.

For the reasons above given the demurrer is overruled.